Chili for the sale of her to the latter, with the knowledge that she would be employed against the government of Spain, with which Chili was at war, yet these negotiations failed, and came to an end, from the inability of the agents to raise the amount of the purchase money demanded; and if the sale of the vessel in its then condition and equipment, to the Chilian government, would have been a violation of our neutrality laws, of which it is unnecessary to express any opinion, the termination of the negotiation put an end to this ground of complaint.

2. The furnishing of the vessel with coal and provisions for a voyage to Panama or some other port of South America, and the purpose of the owners to send her thither, in our judgment, was not in pursuance of an agreement or understanding with the agents of the Chilian government, but for the purpose and design of finding a market for her; and that the owners were free to sell her on her arrival there to the government of Chili, or of Spain, or of any other government or person with whom they might be able to negotiate a sale.

3. The witnesses chiefly relied on to implicate the owners in the negotiation with the agents of the Chilian government, with a view and intent of fitting out and equipping the vessel to be employed in the war with Spain, are persons who had volunteered to negotiate on behalf of the agents with the owners in expectation of large commissions in the event of a sale, or persons in expectation of employment in some situation in the command of the vessel, and very clearly manifest their disappointment and chagrin at the failure of the negotiations, and whose testimony is to be examined with considerable distrust and suspicion. We are not satisfied that a case is made out, upon the proofs, of a violation of the neutrality laws of the United States, and must, therefore, reverse the decree below, and enter a decree dismissing the libel.

An appeal was taken by the government from the decision of the circuit court to the supreme court of the United States, but was not prosecuted to a hearing, being dismissed by consent, November 9, 1868.
[See, also, note to Case No. 9,498.]

UNITED STATES v. The METEOR. See Case No. 15,607.

## Case No. 15,761.

### UNITED STATES v. MEYER.

Circuit Court, D. Pennsylvania.    Oct., 1799.

FEDERAL JURISDICTION—COMMON LAW OFFENCES.

[This was an indictment for libel, and is cited in Wharton's Precedents of Indictments, § 905, note, as an instance of the exercise by the federal courts of jurisdiction over offences of a purely common law origin. The case is nowere reported; opinion not now accessible.]

## Case No. 15,762.

### UNITED STATES v. MEYERS.

[See Case No. 15,847.]

## Case No. 15,763.

### UNITED STATES v. MICKLE.

[1 Cranch, C. C. 268.] [1]

Circuit Court, District of Columbia.    Dec. Term, 1805.

LIQUORS—RETAILER—WHAT CONSTITUTES.

The gratuitous distribution of ardent spirits at a public gaming-table does not constitute the keeper of the table a retailer of spirituous liquors, within the meaning of the act of assembly of Maryland.

Indictment. 1st count, at common law, for a nuisance, in keeping a public gaming-house. 2d. Under the act of assembly of Maryland, for keeping a faro-table, the defendant being a retailer of spirituous liquors.

THE COURT said they had decided, in Ismenard's Case [Case No. 15,450], on the same indictment, that the distribution of spirituous liquors at the gaming-table, without receiving payment specifically therefor, was not a retailing of spirituous liquors within the meaning of the act.

Mr. Jones, for United States, gave up the 2d count.

Verdict, "Guilty on the 1st count."

## Case No. 15,764.

### UNITED STATES v. MILBURN.

[2 Cranch, C. C. 501.] [1]

Circuit Court, District of Columbia.    Nov. Term, 1824.

BRIBERY—PREVIOUS DECLARATIONS.

Upon the trial of an indictment for offering a bribe to a witness, the previous declarations of the defendant of his motives for offering it, cannot be given in evidence by the defendant.

Mr. Taylor, for defendant, offered evidence that [George] Milburn, before the offer of the bribe, said he intended to offer it, to show how easily the witnesses might be bribed, so as to discredit them, not intending to pay the bribe.

But THE COURT (THRUSTON, Circuit Judge, absent) rejected the evidence.

## Case No. 15,765.

### UNITED STATES v. MILBURN.

[4 Cranch, C. C. 478.] [1]

Circuit Court, District of Columbia.    Nov. Term, 1834.

BAIL—WHO MAY TAKE RECOGNIZANCE.

1. When the marshal has arrested a person charged with a misdemeanor, he may take him

[1] [Reported by Hon. William Cranch, Chief Judge.]

to a justice of the peace, to give bail, by way of recognizance, for his appearance in court to answer for the offence; and the marshal is not bound to take the bail-bond himself.

2. A recognizance thus taken by the justice is valid.

Scire facias upon a recognizance taken by a justice of the peace, upon a capias ad respondendum for a misdemeanor in keeping a public gaming-house. Plea, nul tiel record, and issue.

Mr. Brent, for defendant [George Milburn], contended that the recognizance was void; that the marshal had no right to carry the defendant to a justice of the peace to give bail, but should have taken it himself, under the Maryland act of 1780 (chapter 10); and that the justice had no authority to take the recognizance.

Mr. Key, for the United States, contra. The act was made for the ease of the sheriff. It is only peremptory as to the amount in which the sheriff is to take the bond, when he takes it, not that he shall take it in all cases. It was to enlarge the power of the sheriff.

THE COURT ordered judgment to be entered upon the recognizance, being of opinion that the justice had power to take it.

[See Case No. 15,766.]

# Case No. 15,766.

## UNITED STATES v. MILBURN.

### [4 Cranch, C. C. 552.] [1]

Circuit Court, District of Columbia. March Term, 1835.

COURTS—SPECIAL SESSION—PENDING CAUSES.

1. When a special session of the court is ordered for the trial of criminal causes the criminal causes pending in the preceding regular term cannot be continued to the special session, nor can any order be made therein at such special session.

2. Quaere? whether a new capias ad respondendum, for a misdemeanor, can be issued, while the party is in custody of his bail upon a former capias for the same offence, he having failed to appear according to the tenor of the recognizance of bail?

At a special session of the circuit court of the District of Columbia, for the trial of criminal causes, held on the first Monday of September, 1833, by an order of the court made at the preceding regular March term, Mr. Key, Dist. Atty., moved the court to order a new capias ad respondendum against the defendant, George Milburn, upon the presentment found at November term, 1834, for keeping a certain gaming-table called a "faro-bank," upon which a capias ad respondendum, returnable immediately at that term, was returned non est. [See Case No. 15,765.] A new capias was issued, returna-

ble to March term, and was returned, "cepi recognizance." The recognizance was forfeited, and writs of scire facias were issued against Milburn and his sureties returnable to the next regular term of the court, namely, November term, 1833, (being the then next November term,) a new capias was issued upon the same indictment, returnable to this special session, upon which Milburn was taken and discharged on habeas corpus by CRANCH, Chief Judge, because he had been arrested before, and given bail upon the same indictment. See Watkin's Case [Case No. 17,269], at the last term, and the opinion of the court.

THE COURT ordered the question upon Mr. Key's motion to be argued on the 23d instant (that is, 23d September, 1833); CRANCH, Chief Judge, contra; being of opinion that the court, at this special session, has no jurisdiction of the prosecution against Milburn pending at a preceding regular term.

Mr. Key. By the act of March 2, 1793 (1 Stat. 333), a special session is, in effect, only an adjournment of the criminal business. It is still a circuit court, having all the criminal jurisdiction of a regular stated session. All process, &c. is to be returned to the special session. It is not process until an indictment or a presentment is found.

(CRANCH, Chief Judge. That act does not apply to this court, it applies only to courts called by the supreme court, or by a judge of the supreme court and the district judge.)

Mr. Key. The act was to apply to cases pending in the circuit court by presentment or indictment, otherwise it might be holden and no offences to try. The opinion of Judge Wilson [U. S. v. Hamilton] 3 Dall. [3 U. S.] 18, is entirely founded on its being a special session overleaping the stated session of the circuit court. It was certainly competent for this court, at the last stated session, to order all its unfinished criminal business to be continued to this special session. If the causes at the last term were ordered to be continued to this special session, and this court has not jurisdiction of them at this session, they are all discontinued. This court, formerly, (in 1821,) held a special session and tried indictments found at a preceding stated session. This court will not oust itself of its jurisdiction by a mere doubt.

Mr. Jones, contra. The act of 1789, § 5 (1 Stat. 73), giving the power to hold special sessions only applies to the time of holding them; the act of March 2d, 1793, § 3, to the place. Both should have the same construction. The process mentioned in the latter act, is the process only which is applicable to the cases to be tried at the special session. In Hamilton's Case, 3 Dall. [3 U. S.] 17, the supreme court say: "There is a provision, 'that all business depending for trial at any special court, shall at the close thereof, be considered as of course removed to

---

[1] [Reported by Hon. William Cranch, Chief Judge.]